UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

      Plaintiff,

   v.                                  File No. 1:09-CR-215

JASON MICHAEL WOOD,

      Defendant.
_____/

<u>Sentencing</u>

Before

THE HONORABLE ROBERT HOLMES BELL
United States District Judge
April 13, 2010

<u>APPEARANCES</u>

| | |
|---|---|
| DANIEL Y. MEKARU | RAY KENT |
| Assistant U.S. Attorney | Federal Public Defender |
| P.O. Box 208 | 50 Louis, NW, Suite 500 |
| Grand Rapids, MI 49501 | Grand Rapids, MI 49503 |
| Attorney for Plaintiff | Attorney for Defendant |

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

```
 1                                    Grand Rapids, Michigan
 2                                    April 13, 2010
 3                                    3:38 p.m.
 4                              -  -  -
 5
 6                         P R O C E E D I N G S
 7
 8          THE COURT:  Good afternoon, ladies and gentlemen.
 9  This is the matter of United States v. Jason Michael Wood.
10  The Court's file here is numbered 1:09-CR-215.  Mr. Mekaru is
11  standing in here as United States attorney.  Mr. Kent
12  represents by appointment Mr. Wood.
13          We were last here in this matter on January 5th of
14  2010 when a plea was entered to the indictment charging that
15  of enticing a minor to engage in criminal sexual activity, 18
16  United States Code 2422(b).  This Court, having taken
17  testimony, accepted the plea in this matter and set today as
18  the day for sentencing in this case, and a plea agreement that
19  was tendered in conjunction with this matter is accepted as
20  well by this Court, finding that the seriousness of the actual
21  offense behavior has been manifestly seen in this case.
22          There is a 17-page presentence report prepared by
23  Ms. Hodel.  It's the Court's understanding that that's been
24  circulated to counsel.  In addition to that, the parties
25  have -- the defense has given us a sentencing memorandum in
```

1  this matter that the Court as well has reviewed.
2          Concerning the presentence report, Mr. Mekaru, are
3  there any additions, corrections or deletions you would like
4  to have noted?
5          MR. MEKARU:  Your Honor, it's my understanding that
6  there was a last-minute submission regarding the defendant's
7  mental health.  We accept the representation that he was
8  viewed by a doctor and that diagnosis.  We don't necessarily
9  agree with the diagnosis, but we --
10          THE COURT:  Tell me where you are.
11          MR. MEKARU:  I'm sorry, Your Honor.
12          THE COURT:  In the presentence report?
13          MR. MEKARU:  Yes, Your Honor.  It's on --
14          THE COURT:  Paragraph?
15          MR. MEKARU:  Forgive me, Your Honor.  It's Page 12,
16  Paragraph 68.  We're not objecting that that was the finding
17  of the professional, just the conclusion.
18          THE COURT:  I don't think you have to accept or
19  reject it.  It's just a statement of fact that the probation
20  officer received a letter from the attorney indicating that an
21  evaluation had been done of him.  I don't think this calls for
22  you to object or to assent to it.  I think it's just a
23  statement that's in the record here.
24          MR. MEKARU:  Yes, Your Honor.  It's more reacting to
25  a decision that came from the Sixth Circuit a while back.

1  Where the government failed to object, the Court had construed
2  that failure to object as a concession on our part about the
3  conclusion rather than just that this is what a doctor said.
4  So I'm making that distinction, and it's more of a reaction.
5  I understand entirely the Court's position.  I wouldn't
6  necessarily think it was necessary either.  Thank you.
7          THE COURT:  Very well.  Very well.
8          On behalf of the defense, Mr. Kent, as to the
9  presentence report?
10         MR. KENT:  Yes, Your Honor.
11         Just one thing came to light in the eleventh hour
12 here.  I'm on Page 4, Paragraph 11 of the presentence report,
13 which begins by saying, "In August 2007 Sondra Harvey found
14 her teenage daughter's hidden cellular telephone."  That comes
15 out of a police report, and I suspect that it was a typo in
16 the police report because actually they didn't begin
17 communicating until late in the fall of 2007, and I suspect
18 that what the officer who prepared the report intended to
19 write was in August of 2008, so I would just make that comment
20 for the record.  But I know why Officer Hodel wrote it the way
21 she wrote it.
22         THE COURT:  Oh, I see.  You're referring down here
23 to Paragraph 14 which is consistent with your reading talking
24 about late '07, beginning a relationship?
25         MR. KENT:  Yes, Your Honor, yes.

1     THE COURT: Okay. Ms. Hodel, is that -- does that
2  comport with your understanding?
3     PROBATION OFFICER HODEL: Your Honor, I'd have to
4  review the police report again, but I believe that I took the
5  dates of Paragraph 11 from the police report. So it could
6  have been a typo in the police report that I just put onto
7  paper. But nonetheless, it's accurate that the police went to
8  the residence in November.
9     THE COURT: Okay.
10    PROBATION OFFICER HODEL: Of 2008.
11    THE COURT: Okay. Very well. Very well. Very
12 well.
13    Okay. Mr. Wood, have you had a chance to review
14 this presentence report in this matter with your attorney and
15 his counsel?
16    DEFENDANT WOOD: Yes, Your Honor, I have.
17    THE COURT: Are you satisfied with Mr. Kent's
18 representations of you in this matter?
19    DEFENDANT WOOD: Yes, sir, I am.
20    THE COURT: Okay. If there is nothing further, you
21 may come to the podium with your client and I'll hear remarks
22 first on behalf of you and then of your client; the Court
23 noting that apparently as scored, this matter has an adjusted
24 offense level of 31 and a criminal history level of I.
25    MR. KENT: Thank you, Your Honor.

1    Your Honor, as the Court has noted, we did file a
2    sentence memorandum in this matter, and it's not my intention
3    to repeat the contents of the memorandum.  Mr. Wood's lack of
4    other contact with the criminal justice system other than this
5    case, his work history, the support of his family, friends,
6    co-workers, college professors in the many letters attached to
7    the presentence memorandum all speak for themselves.
8        I would touch on just three things, Your Honor.
9    One, repeating a request in the presentence memorandum that
10   the Court allow Mr. Wood to self-surrender.  Mr. Wood has been
11   under some fairly restrictive bond conditions.  He is living
12   with his -- continues to live with his parents at their home
13   in California and has been fully compliant with all of the
14   conditions of bond.  He has -- did continue to go to school
15   while this case was pending and managed to finish another
16   class, and so I would ask the Court to consider
17   self-surrender.  As the Court knows, it can make a difference
18   in his scoring with the Bureau of Prisons in terms of security
19   classification and the ability of him to access programming.
20       Second, we would ask respectfully that the Court
21   recommend Mr. Wood for placement at the Terminal Island Bureau
22   of Prisons facility in San Pedro, California, assuming that he
23   qualifies in terms of his security classification.  Terminal
24   Island is very close to his home.  Mr. Wood's parents, Bruce
25   and Debbie, would -- are very close with their son.  They've

1  traveled here with him for every hearing in this matter.
2  They're in the courtroom today.  And if he is placed at
3  Terminal Island, you know, they'll be able to maintain a very
4  close relationship and visitation schedule, which I think is
5  likely to help him in his adjustment.
6           Finally, we would ask the Court to recommend to the
7  Bureau of Prisons mental health counseling.  Mr. Mekaru has
8  made mention of Mr. Wood's recent diagnosis as possibly
9  suffering from Asperger's Syndrome.  The purpose of that
10 analysis was to see whether counseling might be appropriate
11 and helpful.  Certainly Mr. Wood does not take the position
12 that that somehow excuses his behavior in this case.  Clearly
13 it does not.
14          Asperger's is related, I understand, to autism.  It
15 can make social relationships problematic for people who
16 suffer from it, lead to compulsion issues.  And certainly
17 those things, if those could be dealt with during the period
18 of his incarceration, I think it would help ensure that there
19 are no problems when he finishes and gets out on supervised
20 release.
21          Thank you, Your Honor.
22          THE COURT:  Thank you.  Thank you.
23          Mr. Wood, is there anything you would wish to say at
24 this time?
25          DEFENDANT WOOD:  Yes, Your Honor, I would like to.

I prepared a statement.

Your Honor, I realize what I did was wrong. I am deeply sorry and regretful that I'm standing before you today in federal court as a result of my actions. I take full responsibility for what I have done. I know that starting a relationship with her, Minor A, was wrong because of her age, and I know that sneaking around her parents' back was wrong.

I have learned a great deal from my conduct after experiencing what I've encountered. I look forward to being a law-abiding, productive member of society again and to contributing back to help others learn from my experience in any way possible. I will not reoffend and I will never be involved in any criminal matters after I am finished with my sentence and supervised release.

THE COURT: Thank you. Thank you.

Mr. Mekaru, any remarks on behalf of the government?

MR. MEKARU: Your Honor, the Court has a large amount of information regarding this defendant, and counsel here for the defense has provided this Court with ample information about this defendant's own background. But I would ask perhaps the defendant to consider here the concerns of the victim and her family.

I am pleased to hear that the defendant apologized and recognized the wrongfulness of his conduct as it relates

to the victim as well as to her family. As this Court's well aware, the concern here for this Court and for the government is the care and welfare of our children. A child of 15 years old is not in a proper maturity to make a decision as important as their own sexuality and their own decisions about what to do with their body and when to engage in this sort of conduct. We put the decision on -- really it's incumbent upon the adult to control themselves.

And I know that the defendant has expressed his feelings for this individual, and that's been expressed by his family members. In our estimation, if this were more akin to a traditional relationship, he wouldn't have been sneaking behind the family. He would have shared his feelings with them, asked for their permission, and would have been perhaps given an opportunity to develop a strong relationship. Our concern here is the exploitation of this poor girl and the damage it will cause for her going forward. Thank you.

THE COURT: Thank you.

This Court's duty is to impose a sentence sufficient, but not greater than necessary to comply with the federal sentencing statute, bearing in mind that in this particular case 18 United States Code 2422(b) carries a certain mandatory minimum sentence over which the Court has no control.

The nature and circumstances of this offense are

1  really quite noteworthy in that this was a long-distance
2  communication with a young girl by a man who's now 30 years
3  old or so, and it appears that this was an attempt -- now 32
4  years old.  This was an attempt to create an affair, a love
5  affair, if you will, over the Internet, and it was more than
6  merely boy loves girl, girl loves boy.  It very quickly
7  developed into a rather lurid sexual affair complete with
8  pictures of genitalia, intercourse, et cetera, et cetera.  It
9  appears that this was done with different ruses while this
10 child was still living at home or this young girl was still
11 living at home during the day, and it was repeated more than
12 once, coming all the way from California to kind of a little
13 back town in Michigan for purposes of engaging in this
14 behavior.
15         Certainly, certainly inappropriate by any stretch of
16 the imagination.  Certainly taking advantage of a 15-year-old,
17 soon to be 16, eventually a 16-year-old girl by an individual
18 who is twice that age.  Very problematic, and the specter of
19 the kind of sexual activity is rather shocking, rather
20 shocking.  It points to issues that I'm not sure that the
21 Court is obviously psychologically qualified to categorize,
22 but certainly anyone with a sense of sensibility for human
23 behavior and the effect on other people can quickly see what
24 damage was done certainly to this young child as a result of
25 this free-wheeling and way-out-of-the-ordinary affair that

suddenly went on. So therefore, the nature and circumstances of this offense starting with the Internet and becoming rather graphic, pornographic and otherwise, is very serious.

The history and characteristics of Mr. Wood are that in other respects he was a law-abiding, reasonably serious student; perhaps not as socialized as one might assume for the age, but certainly socialized with a good upbringing. This then means that certainly that aspect of respect for law that would have said, I can't do this, this is improper; not only improper, but it's unlawful and it's corrupting the morals of a minor would have stopped an individual. But apparently it didn't stop Mr. Wood.

It appears that, therefore, a just punishment has been determined by Congress, and an adequate deterrent and a protection of the public has as well been determined, with the educational and correctional treatment segment to be a part of that component for the betterment of society and certainly for the good of Mr. Wood.

Accordingly, the sentence of this Court will be a sentence of 120 months as the minimum of this statute in the custody of the Federal Bureau of Prisons with three recommendations. One is to be evaluated for mental health issues and provided counseling if necessary. The second is to receive intensive therapy for treatment of sexual addictions and/or sexual issues, and I believe there's a gambling issue

that has periodically surfaced itself in this very well-written presentence report. Thirdly, while this Court would like to recommend Terminal Island and has visited Terminal Island along with a group of other judges about two years ago, the Court will leave to the Bureau of Prisons a determination of where in southern California is the most suitable place to address the sexual addiction issue and gambling issue and also to address the counseling component that will best address Mr. Wood's circumstances.

A supervised release period of ten years will follow with the standard conditions of reporting and remaining law-abiding. Primarily there is no drug-testing, of course, required, but must register as a sex offender; not to be around minors, either socially or vocationally, without consent of the probation officer; to make full financial disclosure at all times as to monies earned and monies given to him; and to be employed with the approval of the probation officer as to the type of employment. Not to have any possession nor in any way be involved in any pornography of any kind, and to have no contact, obviously, with this victim; to only use a computer with the probation officer's consent and supervision and with the appropriate filtering mechanisms in it for purposes of staying away from that which has gotten him into trouble in this case.

A fine of $2,000 will be required payable within six

13

1    months of the going into confinement or $25 a month on
2    supervised release and $100 a month -- excuse me, $25 a month
3    on Bureau of Prisons time and $100 a month on supervised
4    release.  The special assessment of $100 will be levied as is
5    required in this matter.
6              Does the government have a motion as to Counts 2
7    through 5?
8              MR. MEKARU:  Move to dismiss.
9              THE COURT:  Motion granted.
10             Is there any other objection not previously raised
11   that the Court should be made aware of, Mr. Kent?
12             MR. KENT:  No, Your Honor.
13             THE COURT:  Mr. Mekaru?
14             MR. MEKARU:  No, Your Honor.
15             THE COURT:  You have a right of appeal from this
16   sentencing and this conviction.  You have 14 days in which to
17   file that appeal.  Those forms are being provided to you.
18             The Court is satisfied that you have come some
19   distance, your family's come with you I believe every time.
20   You have kept the terms and conditions of your bond, and do I
21   have your word that you will keep those conditions until the
22   government and the marshal informs you as to where you shall
23   report?
24             DEFENDANT WOOD:  Thank you, Your Honor.  Thank you,
25   sir.

1       MR. KENT:  No, he's asking do you promise that you
2  will continue to abide by your conditions.
3       DEFENDANT WOOD:  Oh, yes, Your Honor.  I promise I
4  will, yes.
5       THE COURT:  Very well.  Bond will be continued,
6  then.  You will be notified within about 30 to 45 days by the
7  marshal as to where you will turn yourself in.
8       Anything else, Mr. Kent?
9       MR. KENT:  No, thank you, Your Honor.
10      THE COURT:  Mr. Mekaru?
11      MR. MEKARU:  No, Your Honor, thank you.
12      THE COURT:  That's all for the record.
13      DEFENDANT WOOD:  Thank you, Your Honor.
14           (Proceedings concluded at 4:00 p.m.)
15
16
17
18
19
20
21
22
23
24
25

CERTIFICATE OF REPORTER

       I, Kevin W. Gaugier, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth.

       I do further certify that the foregoing transcript was prepared by me.

/s/ Kevin W. Gaugier

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
110 Michigan N.W.
622 Federal Building
Grand Rapids, MI 49503